Filed 5/28/25  P. v. Avalos CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD PETER AVALOS<br><br>    Defendant and Appellant. | B336604<br><br>(Los Angeles County<br>Super. Ct. No. A449063) |

    APPEAL from an order of the Superior Court of Los Angeles County, Maria A. Davalos, Judge.  Affirmed.

    Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

    Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 1981, Richard Peter Avalos was convicted of first degree murder following a robbery attempt in which law enforcement shot and killed a victim Avalos was using as a human shield. A provocative act theory of murder was the only theory presented at trial. In 2022, Avalos moved for resentencing under Penal Code section 1172.6.[1] The trial court denied Avalos's petition at the prima facie stage. Avalos argues on appeal that his jury could have relied on a traditional felony murder theory to convict him. However, the record and the law make clear that a provocative act theory was the only available theory under the circumstances of this case. Avalos therefore has not demonstrated error, so we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      Conviction and direct appeal

As stated in Avalos's direct appeal,[2] "The offenses charged all arose out of an [April 1980] attempt by defendant to rob a donut shop. In the course of that event, defendant attempted to rob Jose Luis Trevino (the victim named in count I), his mother and his sister. During the attempted robbery, he compelled the

---

[1]      All undesignated section references are to the Penal Code.

[2]      *People v. Avalos* (Feb. 19, 1985) Cr. 41017, opn. ordered nonpub. Nov. 4, 1985 (*Avalos*). The Court of Appeal initially issued a decision in 1982, the Supreme Court granted review and remanded the case for reconsideration (Nov. 26, 1984, Cr. 22819), and the 1985 opinion was issued after remand. The recitation of the facts from the prior appellate opinion is included here solely for the purpose of efficiently summarizing the background of this case. We do not rely on these facts in resolving the issue raised in this appeal.

victim and the mother, at gun point, to leave the mother's car and approach the store. The sister succeeded in going into a back room and alerting the sheriff's offices. The deputies arrived before defendant had actually taken any money into his possession. On the deputies' arrival, a confrontation began, during which defendant, using the victim as a shield, moved several feet. The defendant opened fire, an exchange of shots ensued, and Trevino was killed by a bullet fired by one of the deputies." (*Avalos, supra*.)

"Defendant was charged with: (count I) the murder of Jose Luis Trevino, in violation of section 187 of the Penal Code; (count II) kidnapping Trevino for the purpose of robbery, in violation of section 209 of the Penal Code; (count III) attempted robbery of the mother, in violation of sections 664 and 211 of the Penal Code; (count IV) attempted robbery of the sister, in violation of sections 664 and 211 of the Penal Code; (count V) attempted robbery of Trevino; (count VI) assault with a deadly weapon on deputy Finley; (count VII) assault with a deadly weapon on deputy Flaget; and (count VIII) unlawful possession of a firearm by an ex-felon. Use of a firearm was alleged as to the first seven counts. In connection with count I (murder) two special circumstances were alleged: (1) that the murder was committed during or in flight after a robbery; and (2) that the murder was committed in connection with a kidnapping. After a trial by jury [in 1981], defendant was found guilty on counts I, II, III, IV, V, and VIII: he was found not guilty on count VII and the jury was deadlocked on count VI, which ultimately was dismissed. On the murder count, the jury found true the two special circumstances alleged. At the penalty phase, the jury fixed the penalty as life without possibility of parole. Defendant was sentenced to state

3

prison for life without possibility of parole; sentences on the other counts were ordered to run concurrently with the sentence on count I." (*Avalos, supra.*)

In Avalos's direct appeal, the court observed that "[b]oth the prosecution and the defense admitted that [Avalos] was not the actual killer, but that the victim had been killed by a bullet fired by one of the deputies." (*Avalos, supra.*) The court found that the evidence did not support the kidnapping finding. The court therefore reversed the conviction on count II and modified the judgment on count I to delete all references to kidnapping. (*Ibid.*)

Avalos also argued in his direct appeal "(1) that he cannot be sentenced to life in prison without the possibility of parole under Penal Code section 190.2(a)(17) as the jury was not instructed that before it could find the special circumstance to be true, it must find that the defendant intended the killing; and, (2) that there is insufficient evidence to support such a finding even if made." (*Avalos, supra.*) The appellate court rejected these arguments. It stated that "the jury was specifically instructed that before it could find the special circumstance to be true, it must find that defendant had the intent to kill." (*Ibid.*) The court observed, "Both the prosecution and the defense admitted that the defendant was not the actual killer, but that the victim had been killed by a bullet fired by one of the deputies. Therefore, before finding the special circumstance to be true the jury must necessarily have found that the defendant intended to kill or aid in the killing. The instruction given clearly placed the issue of intent before the jury . . . ." (*Ibid.*)

The court also rejected Avalos's contention that there was insufficient evidence to support the intent-to-kill finding, stating

4

that "[c]onsiderable evidence indicates that the defendant knew his hostage would be killed in a shoot-out with the police. . . . We do not hold, therefore, that the jury was without substantial evidence in rendering its verdict." (*Avalos, supra*.)

## B.     Petition for resentencing

In March 2022, Avalos filed a petition for resentencing under former section 1170.95.[3]  The court appointed counsel for Avalos and requested a response from the People.  The People argued that Avalos was not eligible for resentencing as a matter of law because he had not been convicted under any theory of murder in which malice was imputed to him.

The People submitted the appellate decision from Avalos's direct appeal and the jury instructions given at Avalos's trial. The jury was instructed with CALJIC No. 8.12, which stated that when "intentional conduct is sufficiently provocative that a peace officer kills another person in a reasonable response to such intentional conduct, the killing is considered in law to be the act of the perpetrator."  The jury was also instructed with CALJIC No. 8.80, relating to special circumstances, which stated, "If the defendant[ ] was not the actual killer, it must be proved beyond a reasonable doubt that he intentionally aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of the murder in the first degree before you are permitted to find the alleged special circumstance of that first degree murder to be true as to the defendant."  In addition, the jury was instructed with CALJIC No. 8.21, first degree felony murder.

---

[3]     Effective June 30, 2022, former section 1170.95 was renumbered to section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)

5

Avalos, through counsel, filed a reply brief. He argued in part that the jury was instructed on felony murder, which allowed the jury to impute malice to Avalos.

At a hearing on January 11, 2024, the trial court discussed the jury instructions with counsel. The court noted that the jury instructions and appellate analysis made clear that Avalos was the "sole perpetrator of the crime" and a police officer was the shooter. The trial court stated that the jury "necessarily had to have found that [Avalos] acted with the intent to kill even though he was not the actual killer, because the actual killer was a police officer." The court therefore held that the record contradicted Avalos's contention that he could not be convicted under a viable theory of murder, and denied his petition.

Avalos timely appealed.

## DISCUSSION

Avalos acknowledges that the provocative act theory of liability "has generally been held to remain a valid theory of murder liability subsequent to the changes to the law" relevant to section 1172.6. He argues, however, that his jury "was instructed on an alternative felony murder theory of liability for first degree murder," and therefore "the record of conviction does not establish upon which of the two alternative theories the jury relied upon" to convict him. We are not persuaded.

Section 1172.6 applies to a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) To obtain relief, a petitioner must show, in part, that the "petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188

6

or 189 made effective January 1, 2019." (*Id.*, subd. (a)(3).) Avalos has not made this showing.

Avalos was convicted under a provocative act theory of murder. The phrase "provocative act murder" is "merely shorthand used 'for that category of intervening-act causation cases in which, during commission of a crime, the intermediary (i.e., a police officer or crime victim) is provoked by the defendant's conduct into [a response that results] in someone's death.'" (*People v. Concha* (2009) 47 Cal.4th 653, 663.) "The classic provocative act scenario occurs when a perpetrator of the underlying crime instigates a gun battle . . . and a police officer . . . responds with privileged lethal force by returning fire and kills . . . an innocent bystander." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 602-603.)

Since at least 1965, the Supreme Court has held that the traditional felony-murder rule "cannot be used to impose murder liability on a felon when, like here, a killing is committed by the crime victim or a police officer in an effort to *thwart* the commission of a listed felony." (*People v. Antonelli* (2025) 17 Cal.5th 719, 727,[4] citing *People v. Washington* (1965) 62 Cal.2d 777, 781.) Moreover, case law from the same year "established that provocative act murder, unlike felony murder, requires proof of malice aforethought," specifically that "the provocateur him- or herself—the perpetrator who initiates the gun battle, for

---

[4] The Supreme Court in *People v. Antonelli, supra*, held that under previous precedent, a jury could have imputed malice to a "nonprovocateur defendant," so such a defendant is not necessarily ineligible for section 1172.6 relief. (See *People v. Antonelli, supra,* at p. 731.) Avalos was the only perpetrator here, so the reasoning in *Antonelli* does not apply.

example—acts with that mental state." (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1177, citing *People v. Gilbert* (1965) 63 Cal.2d 690, 705.) The provocative act theory "is the only murder theory available when someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1168 fn. 1 (*Flores*).)[5]

The record does not support Avalos's contention that it cannot be "conclusively" determined that the "jury necessarily convicted [Avalos] under the provocative act theory of liability," or that the court impermissibly engaged in judicial "factfinding"[6] by determining that Avalos was convicted under a provocative act theory. The record makes clear that provocative act was the only theory presented at his trial. As noted in the opinion from his direct appeal, Avalos was the sole assailant and provocateur, and "[b]oth the prosecution and the defense admitted that [Avalos] was not the actual killer, but that the victim had been killed by a bullet fired by one of the deputies." (*Avalos, supra*.) Because

---

[5] Avalos suggests in his opening brief that "felony murder instructions should not have been given in this case," but he clarifies in his reply brief that he is not arguing instructional error. Indeed, a claim of instructional error cannot be addressed in an appeal of a ruling under section 1172.6. (See, e.g., *Flores, supra*, 96 Cal.App.5th at p. 1173; *People v. Burns* (2023) 95 Cal.App.5th 862, 867-868.)

[6] At the prima facie stage under section 1172.6, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)

8

Avalos was the sole perpetrator, no other person's malice could have been imputed to Avalos.

Nor was malice imputed to Avalos based solely on his participation in the crime. (§§ 188 subd. (a)(3), 1172.6, subd. (a).) Rather, as the court found in Avalos's direct appeal, "the jury must necessarily have found that [Avalos] intended to kill or aid in the killing.  The instruction given clearly placed the issue of intent before the jury." (*Avalos, supra.*)  A provocative act murder conviction that includes a finding that the defendant personally harbored malice "is fully consistent with the 2019 amendments to section 188." (*Flores, supra,* 96 Cal.App.5th at p. 1173.)

Because provocative act murder was the only theory presented to the jury, and the provocative act theory remains a valid theory of murder under the circumstances of this case, Avalos has not demonstrated that the trial court erred in denying his section 1172.6 petition at the prima facie stage.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


ZUKIN, ACTING P. J.                                    MORI, J.

9